Whalev, GMef Justice,
delivered the opinion of the court:
At the time here involved the plaintiff was a commissioned Officer in the Regular Army. By special orders of the War Department March 16,1937, he was relieved from assignment and duty at Fort Wayne, Michigan, and transferred to duty in the Philippine Department. Pursuant to these orders he traveled from Fort Wayne to Fort William McKinley, Philippine Islands.
Plaintiff’s household goods were moved by Army transport overseas, were transshipped at Pier No. 1, Post Manila, Philippine Islands, to lorchas, which carried them thence and they were unloaded therefrom and deposited in the sorting room of the Quartermaster’s Receiving Office, Fort William McKinley immediately preceding Armistice Day, November 11, 1937. That day being a legal holiday, no work was done at the receiving office. That afternoon, the Pasig River overflowed its banks, inundating the receiving office about 18 inches. This flooding destroyed or damaged plaintiff’s household goods and he sought and now seeks reimbursement for the damage.
The case was tried solely on documentary evidence and the facts recited are based on such evidence. There was no oral testimony.
When first considering plaintiff’s claim the War Department treated it as coming under the provisions of the amend-atory act of March 4, 1921, 41 Stat. 1436. The relevant portions thereof are as follows:
Section 1. That private property belonging to officers, enlisted men, and members of the Nurse Corps (female) of the Army, including all prescribed articles of equipment and clothing which they are required by law or regulation to own and use in the performance of their duties, and horses and equipment required by law or regulations to be provided by mounted officers, which since the 5th day of April, 1917, has been or shall hereafter be lost, damaged, or destroyed in the military service, shall be replaced, or the damage thereto, or its value *604 recouped to the owner as hereinafter provided, when such loss, damage, or destruction has occurred or shall hereafter occur without fault or negligence on the part of the owner in any of the following circumstances: $ $ ‡ *
Third. When during travel under orders such private property, including the regulating allowance of baggage, transferred by a common carrier, or otherwise transported by the proper agent or agency of the United States Government, is lost, damaged, or destroyed; but replacement, recoupment, or commutation in these circumstances, where the property was or shall be transported by a common carrier, shall be limited to the extent of such loss, damage, or destruction over and above the amount recoverable from said carrier. * * * * *
Sec. 2. That except as to such property as by law or regulation is required to be possessed and used by officers, enlisted men, and members of the Army Nurse Corps (female), respectively, the liability of the Government under this Act shall be limited to damage to or loss of such sums of money or such articles of personal property as the Secretary of War shall decide or declare to be reasonable, useful, necessary, and proper for officers, enlisted men, or members of the Army Nurse Corps (female), respectively, as the case may be, to have in their possession while in quarters, or in the field, engaged in the public service in the line of duty.
Sec. 3. That the Secretary of War is authorized and directed to examine into, ascertain, and determine the value of such property lost, destroyed, captured, or abandoned as specified in the foregoing paragraphs, or the amount of damage thereto, as the case may be; and the amount of such value or damage so ascertained and determined shall be paid by disbursing officers of the Army, or such property lost, destroyed, captured, or abandoned, or so damaged as to be unfit for service, may be replaced in kind from Government property on hand when the Secretary of War shall so direct.
Sec. 4. That the tender of replacement or of commutation or the determination made by the Secretary of War upon a claim presented, as provided for in the foregoing section, shall constitute a final determination of any claim cognizable under this chapter, and such claim shall not thereafter be reopened or considered. * ❖ ❖ ❖ Hi
Plaintiff’s claim went through channels, and on May 12, 1938, the Assistant Secretary of War approved a recommen *605 dation made to him that it be disallowed, on the ground that the evidence indicated the goods had been damaged or destroyed while in storage, and not while in transit. What that evidence was is not disclosed.
The plaintiff was not satisfied with this disposal of his claim, protested, and with his protest filed a certificate indicating that the goods were in transit when destroyed or damaged, and not in storage.
Plaintiff’s claim, thus newly supported, went through the same channels again, and the examining board found certain facts which are in substance the facts hereinabove recited.
This time plaintiff’s claim received favorable administrative action, except that before being referred to the Secretary’s office it was forwarded to the Comptroller General, who disallowed it on the ground that the goods were in storage, not in transit, and damages could not be recovered under the act of March 4,1921, quoted above.
After this disallowance by the Comptroller General the plaintiff’s claim received further consideration in the War Department, and this time was referred to the Secretary of War, who approved it in the sum of $284.18, as a claim “under the provisions of the appropriations for damage incident to training, etc., of the Army.” The provisions so referred to are obviously those contained in Section 223, Title 31 of the U. S. Code.
Section 223, Title 31, of the TJ. S. Code reads:
Settlement of claims, including claims of military and civilian personnel in and under the War Department, not exceeding $500 each in amount for damages to or loss of private property incident to the training, practice, operation, or maintenance of the Army that have accrued, or may hereafter accrue, from time to time, shall be made by the General Accounting Office, upon the approval and recommendation of the Secretary of War, where the amount of damages has been ascertained by the War Department, and payment thereof will be accepted by the owners of the property in full satisfaction of such damages.
There is no doubt that if these goods were in transit pursuant to the officer’s travel orders, any disbursement for damage would be under the act of March 4,1921, and not under the *606 successive appropriation acts codified as Section 223, Title 31, U. S. Code. Regnier v. United States, 92 C. Cls. 437.
However, the act of March • 4, 1921, mentions neither “transit” nor “storage”. It says compensation is recoverable when loss, damage, or destruction occurs “during travel under orders.” When used with reference to a movement by private or common carrier, the word “travel” is more often applicable to a voluntary agent than to inanimate objects such as household goods.
Orders of course are directed to an officer and not to his goods. “Travel under orders”, in a fair and reasonable interpretation of the statute, has reference to that which was undertaken pursuant to the travel orders, and the period covered, in relation to the household goods, may extend beyond the period of the officer’s own travel. He may well conclude his own travel before his goods reach the destination specified in the travel orders.
The goods here did not reach their destination until they were placed at the disposal of the officer. If the situation at time of loss, damage, or destruction, was such that they were awaiting the officer’s disposition of them, they might be considered as at the end of the transportation permitted under the travel orders, although that matter need not here be determined, for they were still in the sorting room. They had to be assorted, for one of at least three purposes, for delivery to the officer, for further transportation, or for placement in storage.
It was fair to the officer that when on account of the travel orders he lost control of his goods and could take no measures of his own for their protection and preservation, he should be made whole for their loss, damage, or destruction. The statute limits recovery to situations where the loss, damage, or destruction has occurred without fault or negligence on the officer’s part.
That the Secretary of War mistakenly gave his final approval to plaintiff’s claim under Sec. 223, Title 31, U. S. Code, instead of the act of March 4,1921, is immaterial, for his decision as to such application was a conclusion of law, not binding on the Court. It may very properly be inferred from the record that the administrative officers, confronted *607 with an adverse decision with respect to the act of March 4, 1921, concluded that as an alternative Sec. 223, Title 31, of the U. S. Code might be available. And that is apparently all that the decision of the Secretary of War on the law amounted to.
“A construction of a statute which produces a consequence opposed to the spirit of the legislation is to be avoided if possible.” Biulders' Club v. United States, 83 C. Cls. 556, 560. “Statutes should have a reasonable construction and the language must be interpreted with reference to the subject matter and the general course of business to which they relate and in such manner that the beneficient provisions of remedial laws may not be thwarted by nice technicalities obviously not within the minds of the legislators.” Siegel et al. v. United United, 84 C. Cls. 551, 558.
Plaintiff is entitled to recover $284.18. It is so ordered.
Madden, Judge; Whitaker, Judge; and Littleton, Judge, concur.
Jones, Judge, took no part in the decision of this case.